By the Court, Coweint, J.
McDuffe having been examined in chief, the whole case of the plaintiff was disclosed, and his claim sought to be sustained by McDuffe’s testimony. I do not think McDuffe made out, in any view, more than an assignment as collateral security for what he owed Zeh. Could he have sustained the assignment, therefore, and Zeh had recovered and collected the money, it would have benefitted the witness to the amount of the recovery. A failure to recover would, of course, have been his loss to a corresponding extent. There needs no authority to show that the assignor of a chose in action, by way of collateral security for his own debt, cannot be a witness for his assignee without a release. The demand being assigned, and the assignee being defeated on the merits, this would conclude McDuffe against an action on a subsequent re-assignment to him.
So much, supposing there was a valid assignment of any kind. I think there was not; and that the witness himself failed to prove one, for reasons I shall give in their place. Yet he was interested to fix the defendant with a debt, and show that it was assigned. The legal bias upon his mind was none the less for that reason. The plaintiff assumed certain facts to exist which would benefit the witness directly, if they could be made out by him; and a failure would be equally detrimental to him. These facts the plaintiff proposed to make out by his testimony. I think he was interested. It is no answer to say he showed a debt which would fall to himself if he failed to- swear it into the pocket of the plaintiff, and so his interest was equal. He was called to show the existence of that very debt.
*203 The objection, below, that Artcher’s trust was void by the revised statutes, is not now taken. It is said, however, that Artcher’s agreement fdr the sale of the land to McDuffe was void because by parol. The objection in this form might perhaps have been available, but it cannot be considered here. Had it been raised below, a writing might have been proved. If the agreement for the sale was valid, then the subsequent arrangement by parol that McDuffe should sell the land, and that Artch- or should hold that part of the purchase money which was equitably due to McDuffe in trust for him, was not objectionable under the revised statutes as to. trusts. It related to a trust in personal property—the equitable interest of McDuffe in the mortgage moneys. (Kane v. Gott, 24 Wend. 641, 659, 661.) That the agreement by which the trust was raised related to an interest in lands, and was therefore void by the statute of frauds, was not made an objection below; nor is it urged now.
Artcher was to pay Zeh so soon as the mortgage moneys should be paid to him, (Artcher.) That might have been within a few days or months, if he and the mortgagors had chosen so to arrange the matter. The share belonging to McDuffe would, in such an event, by the terms of the agreement, have been due. To bring a contract within that part of the statute of frauds relating to the time of performance, the contract must be necessarily incapable of performance within a year, (a)
But the first objection taken on the motion for a nonsuit should have been allowed. By the 2. R. S. 70, 2d ed. § 3, in order to pass the interest in a chose in action, where the price exceeds $50, there must be a writing, or the evidences of the debt or some of them must be delivered, or some part of the purchase money be paid; otherwise, the transfer is void. It is supposed that here was something equivalent to part payment of the money, because the terms of the agreement were such as to extinguish fro tanto the debt due from McDuffe to Zeh; in other words, that the transfer was accepted as a payment, and *204 per se worked a satisfaction. McDuffe agreed with Zeh that Artcher should pay him, and Zeh stipulated that if Artcher would agree to pay him, he would give McDuffe credit for the sum; or would endorse it on the note. But it never was credited, endorsed or receipted in any form; at least nothing of the kind was shown. It need not be denied that a promise to endorse or credit Artcher’s agreement to pay, in satisfaction or payment of so much as the sum amounted to, would operate as an extinguishment; ‘ or, in other words, that an agreement to give an absolute credit would have that effect. But the agreement leaves it equal whether the endorsement or credit was not to be the usual conditional one, to become absolute on the assigned claim proving available. Such is the legal construction of an arrangement to take a claim against a third person, to be applied upon a precedent debt; and the law will not hold it to be an absolute payment, unless there be an express agreement to take it as, per se, a satisfaction. In the absence of such an agreement, the law will not compel the creditor to apply it in discharge till the money be actually received. Here are no such words as absolute payment, absolute satisfaction, absolute discharge, or the like, to indicate that the credit ivas to differ from the one usual in such cases. Even the transfer of a negotiable note against a third person would not have been a satisfaction on the terms here used. But we are not left to implication. If this plaintiff really . intended to work an extinguishment of his claim against McDuffe, why did he not endorse Artcher’s promise as so much money paid on the note, or credit, or give a receipt for it as such ? Down to the very time of the trial he had done neither. He left his note to speak the same language as it did before the arrangement was made; at least we are to intend that he did, for his counsel do not pretend that he had applied the demand said to have been transferred, in any form, absolute or conditional. In refusing to apply it absolutely, I admit he acted according to the legal inference of what was intended; but the omission strengthens that inference. It took away all doubt of what the parties intended, and left no question for the jury. *205 Suppose this action had been against McDuffe, and it had appeared that the money had never been paid by the mortgagors and was never like to be, or that Zeh had failed to collect of Artcher for any cause not imputable to Zeh; clearly the mere arrangement between him and McDuffe could not be allowed as a bar.
Since the revised statute of frauds putting equitable transfers of choses in action on a footing similar to that on which sales of goods stand, if there be no writing and no delivery, the assignee must pay something, at least part with something of value. The statute requires that he should pay some part of the purchase money. No doubt it must be taken, in its spirit, to mean any thing or part of any thing given, by way of consideration, which is money or money’s worth. But the object Avas to have something pass between the parties beside mere words; some symbol like earnest money. (2 Black. Com. 448.) Here, every thing lies in parol; and even if there had been the express agreement which is set up—an agreement for absolute credit—I should doubt whether the statute would be satisfied without something more; at least some absolute endorsement or written credit at the time. One object of the statute was to prevent perjury. The method taken was, to have something done; not to rest every thing upon mere oral agreement. Here, even the agreement is not direct; but rather sought to be raised by way of construction on an equivocal conversation.
Taken in any view, therefore, I think the assignment was void within the intent, as it is clearly within the words of the statute of frauds.
The judgment must be reversed; a venire de novo to go from the court below; the costs to abide the event.
Ordered accordingly.

 See Lockwood v. Barms, (3 Hill, 128, 130, note (a)).